IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHRISTINE TURNER,
Special Administrator of
the Estate of Linda Warner,
Deceased                                                                                         PLAINTIFF

v.                                  No. 4:18-cv-468-DPM

GARRY STEWART, M.D.                                                                   DEFENDANT

## ORDER

1. Turner settled all her claims against all defendants except for the medical malpractice claim against Dr. Stewart. But, the scope of that claim for trial has been a matter of dispute. After an inconclusive round of motions *in limine*, the Court held a hearing in April to address the remaining claim. The hearing helped focus the issues but did not resolve them. At the end of the hearing, the Court directed Dr. Stewart to move for summary judgment on the post-settlement scope of Turner's medical malpractice claim. Dr. Stewart's motion is ripe; the Court regrets its delay in ruling on these well-briefed issues. The Court takes the material facts, where genuinely disputed, in Turner's favor. *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019).

2. Under the Arkansas Medical Malpractice Act, ARK. CODE ANN. § 16-114-201, *et seq.*, Turner can sue Dr. Stewart for Warner's medical

injuries resulting from a professional service, his treatment or order, or a matter of medical science. *Paulino v. QHG of Springdale, Inc.*, 2012 Ark. 55, at *7–10, 386 S.W.3d 462, 466–67. The root question is which of Turner's remaining allegations against him press a malpractice claim.

Claims involving Dr. Stewart's direct care and treatment of Warner are clearly covered by the Act. It's common ground that Warner's 21 November 2017 visit with Dr. Stewart presents a triable claim. The particulars of that visit, and its aftermath, are disputed. Fact issues include Warner's informed consent, the examination's thoroughness, and Dr. Stewart's alleged inaction as the day wore on. Those details will be resolved by the jury.

There's more here, though, and the calendar is important. The dates and key events are undisputed. Warner was booked into the Faulkner County Detention Center on 31 October 2017. Her intake form indicated that she had diabetes and difficulty walking. The form also stated that she was in pain and experiencing stomach problems. On 5 November 2017, Warner submitted a medical grievance repeating her stomach problems and outlining incontinence issues. *Doc. 85–2 at 2*. A few days later, on 8 November 2017, Nurse Grant sent Dr. Stewart a fax with a question:

> Linda Warner – 59 y/o WF/
> Complains of bladder leakage and wants us to supply adult briefs,/

> States that she leaks every time she moves/
> We have let the officers know that she will need to replace feminine napkins,/
> frequently./
> Any other orders concerning this detainee?/
> Respectfully,/
> Karen D. Grant, LPN/
> [/s/ Karen D. Grant, LPN]/

*Doc. 83 at 35*. Dr. Stewart's handwritten response on a return fax was "No." *Doc. 83 at 35*. A week later, on 15 November 2017, Warner asked to see Dr. Stewart. She requested her medications. She reported pain, fibromyalgia, high blood sugar, and a rash. And she asked for Depends, to help manage her incontinence. On the same day, Dr. Stewart signed off on a medication order form for Warner. He did not see or examine her until six days later, on November 21st.

When was a doctor-patient relationship established between the two? *Chatman v. Millis*, 257 Ark. 451, 453, 517 S.W.2d 504, 506 (1975). This Court's *Erie*-educated prediction, *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010), is that the Arkansas Supreme Court would conclude that Dr. Stewart's doctor-patient relationship with Warner began when he responded to the fax on November 8th. His decision not to give further orders was a professional service, which the Act covers both as an action and an omission. ARK. CODE ANN. § 16-114-201(3). The relationship continued. On November 15th, though he

hadn't examined her, Dr. Stewart was informed about Warner's complaints and put in a medication order in response to them. In the Act's terms, through his order, he again provided her professional services as the licensed health care provider responsible for her. *Ibid.*; see also, *Paulino*, 2012 Ark. 55, at *7–10, 386 S.W.3d at 466–67. Whether—based on the facts known to him—Dr. Stewart should have done anything else between November 8th and 15th, and whether he should have done more on November 15th than a medication order, and whether his treatment decisions caused Warner's medical injuries, are also triable malpractice issues.

The remainder of Turner's claims sound in something other than medical malpractice because there was no doctor-patient relationship undergirding those claims. *Thompson v. Sparks Regional Medical Center*, 2009 Ark. App. 190, at *5, 302 S.W.3d 35, 38. There was no doctor-patient relationship on Warner's intake at the jail. A person doesn't become a doctor's patient just by virtue of their detention and participation in routine screening. Similarly, Dr. Stewart's role as medical director and policymaker for the jail doesn't create a doctor-patient relationship between him and every detainee. National standards, jail rules, or center protocols don't create that kind of legal duty. *Bedell v. Williams*, 2012 Ark. 75, at *6, 386 S.W.3d 493, 499. Neither does Dr. Stewart's contract with the jail. *Broadway Health & Rehab, LLC v. Roberts*, 2017 Ark.

App. 284, at *7, 524 S.W.3d 407, 412. The filing of a medical grievance, by itself, also doesn't establish the relationship required by the Act. Any allegations stemming from Dr. Stewart's role overseeing Faulkner County Detention Center staffers' contacts with Warner, beyond his direct care and treatment of her, exceed the Act's boundaries. They present § 1983 and negligence claims, which were all settled. And Turner's claims arising from screening, medical grievances before 8 November 2017, and the actions of other jail personnel (throughout November) have also passed out of the case in her global settlement with the Faulkner County Defendants and settlement by them of the non-malpractice claims against Dr. Stewart. *Doc. 45.*

\* \* \*

Dr. Stewart's motion, *Doc. 81*, is partly granted and partly denied. Turner's claims about his medical judgment in treating Warner stretching from 8 November 2017 through her death on 22 November 2017 will be tried. The reserved parts of Dr. Stewart's second motion *in limine, Doc. 53,* are mostly granted, with the proof for trial limited as specified in this Order. *See Doc. 76.* Turner may not reference jail policies related to routine screening or offer proof that Dr. Stewart allegedly violated any other policies before the doctor-patient relationship was established. Turner must proffer any specific policy that she believes mirrors the standard of care and is thus relevant to the 8 November 2017 through 22 November 2017 period. And the Court

will consider admission with an appropriate limiting instruction. This case is first out for trial on 4 October 2021. The deadline for all pretrial filings is extended to 15 September 2021.

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

8 September 2021